J. R. Holsey Sales Co. v. Commissioner.
J. R. Holsey Sales Co. v. Commissioner
Docket No. 1025.
United States Tax Court
1945 Tax Ct. Memo LEXIS 202; 4 T.C.M. (CCH) 500; T.C.M. (RIA) 45163; May 8, 1945
Edward E. Burke, C.P.A., 1 Newark Ave., Jersey City, N.J., for the petitioner. Paul E. Waring, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in petitioner's income tax, declared-value excess profits tax and excess-profits *203 tax, for the calendar year 1940 in the respective amounts of $1,114.19, $820.51, and $1,515.67. These deficiencies resulted from the respondent's disallowance of a deduction made by petitioner on account of salary alleged to have been paid to its president. The issues are, first, whether petitioner paid the sum of $7,666.66 as a balance due upon salary to its president in December 1940, and, second, whether salary in the amount of $12,900 represents a reasonable compensation for services rendered in 1940 by petitioner's president. Findings of Fact Petitioner is a corporation organized under the laws of New Jersey, and its income tax, declared value excess profits tax, and excess profits tax returns for 1940 were filed with the collector of internal revenue for the fifth district of New Jersey. Petitioner was engaged in the retail sales and service of Oldsmobile automobiles, and held a regular dealers franchise from the Oldsmobile division of General Motors Corporation. It kept its books on an accrual basis. During 1940, Joseph R. Holsey was president of petitioner, and he owned ten of the twenty outstanding shares of its no par value common stock. He also had a contract with *204 Greenville Auto Sales Company, the owner of the remaining ten shares of stock, under which he had an option to purchase all of such stock. The Greenville Auto Company was a New Jersey corporation, which had originally organized the petitioner, and from which Joseph Holsey had purchased the ten shares of petitioner's stock which he held in 1940. Thirty-two of the forty-two shares of the stock of Greenville Auto Company were owned by Charles V. Holsey, father of Joseph Holsey. On April 21, 1940, the directors of petitioner corporation passed a resolution that: "* * * the salary of the President of the Corporation for the year 1940 remain the same as that paid for the year 1939, (as per minutes of the meeting of December 16, 1939) unless circumstances should occur during the remainder of the year which may materially affect the income of the corporation." The salary fixed by the resolution dated December 16, 1939, referred to, was $12,900. On December 23, 1940, the directors met and fixed the president's salary for 1940 at $12,900, and directed the secretary of the corporation to pay to the president, upon his request, the difference between the amount already drawn by the president *205 and the sum of $12,900. On December 27, 1940 the president requested payment of the unpaid balance of his salary for the year, and a check for $7,666.66 (the amount of such unpaid balance) was issued to the order of Joseph R. Holsey, and delivered to him. On the same day, he endorsed the check with his name and returned it to the bookkeeper. He intended thereby to make a capital contribution to the corporation, and it was entered on the books as "contributed capital". He filed his income tax return on a cash basis, and reported and paid tax on $12,900 as compensation for personal services. The check was stamped with the company's endorsement in the following language, "For deposit to the account of J. R. Holsey Sales Company", and was so deposited on December 27, 1940 with the Commercial Trust Company of New Jersey, Bergen Avenue office, Jersey City, New Jersey, where petitioner maintained a checking account. The balance on deposit in that checking account as of the close of business on December 26, 1940 was $7,833.26. There were then issued and outstanding other checks besides the one now under discussion, of the total amount of $5,605.10, which had not been presented for payment, *206 and were not presented for payment until after the salary check had been deposited. Petitioner's balance sheets as of December 31 of the years 1938, 1939 and 1940 were as follows: J. R. HOLSEY SALES COMPANY BALANCE SHEETS December 31,
December 31,
December 31,
1938
1939
1940
ASSETS
Cash
$ 1,853.15
$ 2,436.88
$ 3,993.71
Notes and Accounts Receivable, less Reserve for
Bad Debts
15,650.76
4,008.23
14,393.46
Inventories
31,900.85
49,354.06
63,865.30
Loans Receivable
2,800.00
Machinery, Equipment and Furniture & Fixtures,
less Reserve for Depreciation
1,960.05
3,015.42
3,587.95
Special Discounts Receivable
716.52
2,424.25
3,004.03
Contract Deposits
1,000.00
1,758.33
1,175.00
Prepaid Expenses
286.28
424.61
447.77
Repossession Reserve
2,138.89
3,937.24
3,066.14
$55,506.50
$67,359.02
$96,333.36
LIABILITIES
Accounts Payable
$ 8,032.04
$ 4,638.08
$ 5,728.36
Notes Payable
18,948.11
24,012.42
33,440.16
Accrued Taxes
515.74
1,242.34
4,519.65
Accrued Insurance, Payrolls, etc.
513.07
659.03
1,447.38
Customers Deposits and Credit Balances
3,507.52
3,824.54
Common Stock - No Par
15,000.00
15,000.00
15,000.00
Paid in or Capital Surplus
11,000.00
11,000.00
18,666.67
Earned Surplus and Undivided Profits
1,497.54
7,299.63
13,706.60
$55,506.50
$67,359.02
$96,333.36
*207 During the tax year, petitioner had a line of credit with the Commercial Trust Company, and had, in fact, borrowed $5,000 from that bank. The bank had never refused to lend petitioner any money. Petitioner also borrowed money from General Motors Acceptance Corporation in connection with the purchase of new cars, with the new cars as collateral. At the end of 1940, petitioner had on hand an inventory of used cars in the amount of approximately $35,000, which it had never pledged as collateral for any loans, although a recognized lending agency offered to lend money on the security of the used car stock. It was their practice to lend from 50 percent to 75 percent of the value of the used cars. Joseph R. Holsey had served as petitioner's president since its organization in April of 1936. He managed the corporation, decided upon its general policies, and carried them out. He sold cars himself, and passed upon all the sales made by the salesmen. He supervised the operation of the service department and the parts department, as well as the new and used car departments. Petitioner's gross sales had increased from $469,028.09 in 1939 to $588,938.97 in 1940, and its net taxable income *208 from $6,057.04 in 1939 to $12,879.12 in 1940. Petitioner had paid Joseph R. Holsey, as compensation for his services as president up to the tax year the following amounts: 1936, $10,625; 1937, $12,000; 1938, $6,000; 1939, $12,900. On September 30, 1940, petitioner paid a cash dividend of $3,200 on its outstanding capital stock. The sum of $12,900 was a reasonable allowance for the salary of petitioner's president for the year 1940. The sum of $12,900 representing such salary was properly includible in the gross income of petitioner's president for the year 1940. Opinion KERN, Judge: The two questions before us are, first, whether petitioner may deduct $12,900 as compensation paid for the personal services of its president in 1940, in view of the provisions of section 24 (c) of the Internal Revenue Code; and, second, whether the amount is reasonable, and therefore deductible, under the terms of section 23 (A) of the Code. Section 24 (c) provides that no deduction shall be allowed for expenses incurred, (1) If such expenses * * * are not paid within the taxable year or within two and one-half months after the close thereof; and (2) If, by reason *209 of the method of accounting of the person to whom the payment is to be made, the amount thereof is not, unless paid, includible in the gross amount of such person for the taxable year in which or with which the taxable year of the taxpayer ends; and (3) If, at the close of the taxable year of the taxpayer or at any time within two and one half months thereafter, both the taxpayer and the person to whom the payment is to be made are persons between whom losses would be disallowed under section 24 (b). The controversy centers around the first and second subsection. Each subsection sets forth a condition to the application of section 24 (c), and if any one of them is found not to exist, then section 24 (c) will not be applied. Fincher Motors, Inc., 43 B.T.A. 673; Michael Flynn Manufacturing Co., 3 T.C. 932. It is stipulated that the corporation taxpayer was on the accrual basis, and its president was on a cash basis. The salary would therefore not have been includible in his gross income for 1940 unless received by him in that year. However, constructive receipt is sufficient to require its inclusion, and if it is includible, section 24 (c) may not be *210 interposed to disallow its deduction. See Michael Flynn Manufacturing Co., supra; I.T. 3242, C.B. 1939-I, p. 172; Musselman Hub Brake Co. v. Commissioner, 139 Fed. (2d) 65, where the Sixth Circuit Court of Appeals said: In other words, if the debtor credited to the account of the creditor sums under circumstances which would require reporting income constructively received * * * the deduction would be allowable under the statute because the creditor would be required to include these sums in his gross income. The petitioner contends the salary was, in fact, paid; and that, if it were not, it was constructively received by its president. Petitioner points out that on and after December 23, 1940, its president was authorized to request payment of his salary at any time, was in full control over the affairs of the corporation so that he could have arranged for its receipt at any time, and actually had issued to him by the corporation the latter's check in the amount of the balance due upon his salary; that this check could have been paid at the time it was issued; and that there was no restriction placed by petitioner upon the use of this check. The respondent's *211 chief reliance is on the fact that there was not in the corporation's checking account a balance sufficiently large to pay all of the previously issued checks which had not been presented for payment, and also to pay the salary check in question. There is not much doubt about the accuracy of that fact. But the fact remains that the earlier checks had not been presented for payment at the time when Holsey took his check to the bank, and deposited it to the company's account. He could have presented it for payment, and it would have been paid. He chose not to do so, of his own volition, and for substantial reasons of his own. Holsey intended to make a contribution to the capital of the corporation, in line with his policy, encouraged by General Motors, to build up the capital. He held an option empowering him to purchase all the outstanding stock of the corporation which he did not already own, and he felt it was to his future advantage to build up the corporation. At the time he requested the issuance of a check for the balance of his authorized salary for the year, he intended to use it for that purpose, but no one knew of that intention except himself, and there was no obligation *212 running to petitioner that he endorse it back to petitioner. We conclude that the salary was includible in the payee's taxable income, within the meaning of section 24 (c) (2). Michael Flynn Manufacturing Co., supra; See Valley Tractor & Equipment Co., 42 B.T.A. 311, (and concurring opinion); Pacific Grape Products Co., 42 B.T.A. 914; Edgar M. Soreng, 4. T.C. 870. It was, in fact, included, and the tax thereon was paid. We can borrow for use here the language of the Circuit Court of Appeals for the Sixth Circuit, when it said: On this point, it is a relevant factor that the controlling stockholder reported in his gross income the deductible items which petitioner had claimed in its income tax return. There was no tax evasion in fact, and the evil which the enactment of section 24 sought to remedy was not present. Musselman Hub-Brake Co. v. Commissioner, supra. We have now to determine whether it was reasonable in amount. It was the same amount which Holsey drew for 1939. The gross sales of the corporation increased from $469,028.09 in 1939 to $588,938.97 in 1940, and its net taxable income (after deduction of the questioned *213 salary) increased from $6,057.04 as finally adjusted in 1939 to $12,879.12 in 1940. The earned surplus increased from $7,299.63 in 1939 to $13,706.20 in 1940, and the paid-in surplus was $11,000 before the contribution of the $7,666.67 here involved. The increase in gross sales resulted in increased duties and responsibilities for petitioner's president. He is shown to have had virtually complete control and authority in the conduct of all phases of the business, which embraced new and used car sales, a parts department and a service department, and he assumed full responsibility for all decisions and activities relating to financing the business. It may be assumed that the success of the business was due in large measure to his efforts. That the business was increasingly successful during the tax year is indicated by the large increase in gross sales, the increase in earned surplus, and the fact that the net profits of the business were generous in relation to the invested capital. We conclude that the amount of salary authorized by the board of directors of petitioner to be paid to its president was reasonable and deductible under the authority of section 23 (A) of the Code. Decision *214 will be entered under Rule 50.